IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | | |
|---|---|---|
| ROBERT OSBORNE and MARINA BAY TRANSPORTATION, L.L.C., an Illinois limited liability company, | ) ) ) ) | NO. 08-C-50165 |
| Plaintiff, | ) ) | |
| vs. | ) ) ) | **VERIFIED ANSWER AND AFFIRMATIVE DEFENSES** |
| C.H. ROBINSON COMPANY, a Minnesota corporation, | ) ) ) ) | |
| Defendant. | ) | |

Defendant, C.H. ROBINSON COMPANY, a Minnesota corporation (hereinafter referred to as "C.H. ROBINSON"), by its attorneys, WILLIAMSMCCARTHY LLP, for its Answer to the Complaint of plaintiffs, ROBERT OSBORNE and MARINA BAY TRANSPORTATION, L.L.C., an Illinois limited liability company, states as follows:

## COUNT I

### Breach of Contract

1. At all times relevant hereto, Robert Osborne was an individual residing in Winnebago County, Illinois (hereinafter "Osborne") and Marina Bay Transportation, LLC (hereinafter "Marina Bay") was a limited liability company organized under he laws of the State of Illinois with its principal place of business located in Winnebago County, Illinois. Robert Osborne is the sole member of Marina Bay.

**Answer**: Defendant admits the allegations in paragraph 1.

-2-

2. At all times relevant hereto, C.H. Robinson Company hereinafter "CHR") was a corporation doing business in the County of Winnebago, and State of Illinois.

**Answer**: Defendant admits the allegations in paragraph 2.

3. At all times relevant hereto, Richard Pena, as operations manager for the CHR Rockford, Illinois Branch, and Richard Pena was employed in Winnebago County, Illinois hereinafter "Pena"). Pena possessed actual and apparent authority to bind CHR on the agreements between Osborne, Marina Bay, and CHR.

**Answer**: Defendant admits that Richard Pena was employed by defendant in Winnebago County, but denies the remaining allegations of paragraph 3.

4. At all times relevant hereto, CHR was in the business of brokering freight and shipping service across the United States. CHR had certain contracts with shippers and allocated business to trucking companies to meet the shipping needs of its customers.

**Answer**: Defendant admits the allegations in paragraph 4.

5. In December, 2006, Pena advised that CHR had certain business locked down with three customers in Rochelle, Dixon and Elk Grove, Illinois (hereinafter "Locked Down Business"). Pena offered that if Osborne secured certain semi-tractor trucks and trailers and made available warehousing space in Rockford, Illinois, CHR would direct the Locked Down Business to Osborne through his company, Marina Bay, that this Locked Down Business would generate over one million dollars of gross revenue to Osborne's company, Marina Bay.

**Answer**: Defendant has insufficient information to admit or deny the allegations in paragraph 5 pertaining to discussions by and between Pena and the plaintiff, and in further answer denies any business agreement for "Locked Down Business" as alleged by the plaintiff. Defendant denies the remaining allegations of paragraph 5.

6. On January 2, 2007, Pena confirmed the arrangement in writing of CHR's offer to Osborne and Marina Bay. A copy of such confirmatory writing is attached hereto as Exhibit A.

**Answer**: Defendant denies the allegations in paragraph 6.

7. This written confirmation stated "I can assure anyone that once Marina Bay has their equipment up and running, we will be giving them this business."

**Answer**: Defendant admits that Exhibit A to plaintiff's Complaint contains the language quoted in allegation 7, but denies that Pena was acting on behalf of the defendant in issuing said correspondence.

8. Osborne and Marina Bay obtained the needed equipment and warehouse. Marina Bay purchased and leased additional tractors, trailers, and a fork lift; and rented and readied a warehouse including needed office equipment and additional employees needed to handle the CHR Locked Down Business. The warehouse facilities and equipment were inspected by Pena on behalf of CHR, and on or about February 1, 2007, CHR began directing the Locked Down Business to Marina Bay.

**Answer**: Defendant denies the allegations in paragraph 8.

9. Marina Bay was well regarded by CHR's customers, and Marina Bay quickly was considered a "preferred" CHR carrier.

**Answer**: Defendant denies the allegations in paragraph 9.

10. Marina Bay complied with all its obligations to receive CHR business and in fact began receiving such business; however, the business was never at the agreed level of one million dollars from the Locked Down Business for 2007.

**Answer**: Defendant denies the allegations in paragraph 10, and further denies the

-4-

existence of any business agreement with the plaintiff as alleged herein.

11. Instead of directing the Locked Down Business to Marina Bay, CHR directed some of this business to other carriers.

**Answer**: Defendant denies the allegations in paragraph 11.

12. In about May of 2007, Marina Bay was securing more financing because the level of business from CHR never reached the required amount. As of this date, only about $30,000.00 in Locked Down Business had been directed to Marina Bay. A private investor, Phil Whitehead, was interested in loaning $50,000.00 to Marina Bay as operating capital. In a telephone conference, Pena advised Mr. Whitehead that enough Locked Down Business would be directed to keep ten trucks busy by mid-summer. Marina Bay was not provided the promised level of Locked Down Business.

**Answer**: Defendant denies the allegations in paragraph 12.

13. Without the business as promised, Marina Bay was unable to meet the financial obligations incurred in outfitting itself to handle the promised CHR business. Through September of 2007, only $70,000.00 of Locked Down Business was provided to Marina Bay. Marina Bay was forced to close.

**Answer**: Defendant denies the allegations in paragraph 13.

14. If CHR had directed one million dollars in trucking business to Marina Bay for 2007, Marina Bay would have generated this one million dollars plus generated additional business in the amount of $1,3 30,400.00 in return loads and consolidating partial shipments. Profit after paying all fixed and variable expenses would have been $1,500,000.00.

**Answer**: Defendant denies the allegations in paragraph 14.

15. Additionally, Marina Bay has unpaid expenses in the amount of $200,000.00

-5-

that would have been paid had the business promised been provided as agreed.

**Answer**: Defendant has insufficient information to admit or deny the allegations in paragraph 15.

16. Osborne and Marina Bay have suffered damage as a direct and proximate result of CHR's breach of its agreement to provide business as aforesaid in the total amount of $1,700,000.00.

**Answer**: Defendant denies the allegations in paragraph 16.

17. Marina Bay and Osborne complied with their obligations under the CHR agreement.

**Answer**: Defendant denies the allegations in paragraph 17, and further denies the existence of any business agreement with the plaintiff.

WHEREFORE, and by reason of the foregoing, defendant moves this Court for an Order dismissing Count I of plaintiff's Complaint and for the recovery of its costs.

## COUNT II

### Promissory Estoppel

1-17. Paragraphs 1-17 of Count I are restated as Paragraphs 1-17 of Count II.

**Answer**: C.H. ROBINSON adopts and incorporates by reference its answers to paragraphs 1-17 of Count I as its answer to paragraphs 1-17 of this Count II.

18. At all times relevant hereto, Marina Bay and Osborne reasonably relied upon the promises of CHR to provide one million dollars in gross net revenue for 2007 to Marina Bay from the Locked Down Business.

**Answer**: Defendant denies the allegations in paragraph 18.

19. Marina Bay complied with all requirements to receive such Locked Down Business.

**Answer**: Defendant denies the allegations in paragraph 19, and further denies the existence of any business agreement with the plaintiff.

20. CHR breached its promise to provide the business and Osborne and Marina Bay were damaged as aforesaid.

**Answer**: Defendant denies the allegations in paragraph 20, and further denies the existence of any business agreement with the plaintiff.

WHEREFORE, and by reason of the foregoing, defendant moves this Court for an Order dismissing Count II of plaintiff's Complaint and for the recovery of its costs.

## AFFIRMATIVE DEFENSES TO ALL COUNTS

1. The Complaint fails to state a claim upon which relief may be granted.

2. The Plaintiffs' claims are barred by the doctrine of unclean hands.

3. The Plaintiffs' claims are barred in whole or part by its failure to take commercially reasonable steps to mitigate its own claimed damages.

C.H. ROBINSON COMPANY,
a Minnesota corporation, Defendant
By WILLIAMSMCCARTHY LLP


By: /s/ John J. Holevas

STATE OF MINNESOTA　)
　　　　　　　　　　　) SS.
COUNTY OF HENNEPIN　)

## VERIFICATION

Personally appeared before the undersigned Tim Manning, Vice President of Transportation of C.H. Robinson Company, a Minnesota corporation, who, after being duly sworn, deposes and on oath says that he is authorized to make this verification, on behalf of C.H. Robinson Company, a Minnesota corporation, and that the facts contained within the foregoing Answer are true and correct to the best of his knowledge, information and belief.

　　　　　　　　　　　　　　　C.H. Robinson Company, a Minnesota corporation

　　　　　　　　　　　　　　　By: _____
　　　　　　　　　　　　　　　　　Tim Manning
　　　　　　　　　　　　　　　　　Vice President of Transportation

Subscribed and sworn to before
me on August 14, 2008.

_____
Notary Public


JANE RIEF
Notary Public-Minnesota
My Commission Expires Jan 31, 2010

-8-

## CERTIFICATE OF LAWYER

Pursuant to Rule 5 of the Federal Rules of Civil Procedure, the undersigned certifies that on August 14, 2008, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system.

/s/ John J. Holevas

John J. Holevas, Esq.
Marc C. Gravino, Esq.
WILLIAMSMCCARTHY LLP
120 West State Street, Suite 400
P.O. Box 219
Rockford, IL  61105-0219
815-987-8900